First case this afternoon is Ellen Laird-Cordivari v. The Workers' Compensation Commission, 5080651. Counsel, please, let me just ask one question. The people here on the last case, both of you are residents on each side, and you're the employee. Counsel, on those other three cases, we might take these two first, and then take yours, the three of them together. Understand that? Those three cases will be argued very quickly and at the same time, Justice. I'm sure they'll be handled within the time of a normal argument. They're very similar facts and very similar legal issues. All right, we'll allow it to continue that way. Do you agree? I have no problem with it. Please remember. No, we'll go along with you if you're correct. All right. Counsel, for the appellant, please proceed here. Good afternoon, everyone. My name is Fred Keck. I'm from Wildmonster and Wiginton in Belleville. This is the first time I've had the opportunity to appear before this court. I appreciate it. I would rather be the appellee as opposed to the appellant, but that's the status we're here today. I have to first of all apologize for my voice. I've got a head cold. I've had it this week. I'm sorry if I cough or you don't understand me. If you have any questions, please let me know, okay? The petitioner and the appellant in this case is mindful of its burden before this court. We must show that the findings of the commission in this case were against the manifest way of the evidence, and this court may not substitute its judgment for the commission on things like weighing of evidence, et cetera. I was mindful, though, to pull a case, which is why I'm here. The citation is from Imperial Bondware, which is a Fifth District case, which I've cited in my brief. And I'd indicate the court in that case said, While we are reluctant to disturb an award of the commission that has been confirmed on judicial review, we cannot abdicate that responsibility. And here we have a situation where the petitioner and appellant received an award before the arbitrator in Belleville. That award was appealed to the commission, and it was modified. In turn, that work was appealed to St. Clair County Court, and the commission was affirmed. I would direct the court members to appendix page 19, and that is the decision and opinion on review issued by the commission in this case. And the commission made two separate findings that are set forth in my brief, and I'm not going to regurgitate those, but I do want to just point out a couple items that I'd request the members look at specifically. First of all, with regard to the sinusitis condition of the petitioner and appellant. The commission, in this case, found that the petitioner's sinusitis condition was not causally connected to this accident. And in quoting the commission's decision, they found there was no medical evidence offered to prove that the fall aggravated or made petitioner's sinus conditions worse. I would submit to the court members today that that statement in and of itself is against the manifest weight of the evidence. And I'd offer, as a support of that, appendix page 110, and that's the report of Dr. Pardo, who is the treating physician of the petitioner in this case. And specifically, it indicates that a second injury resulting from this accident is the maxillofacial industries, and the chronic sinusitis condition has been aggravated by this traumatic event. That is medical evidence in support of her claim for an aggravation of her chronic sinus condition. Let's stop and consider that. I mean, obviously, as we know, without belaboring it, the commission, it's within the province of the commission to weigh the credibility and believability of the witnesses, the weight to be given to the evidence. But is it clear, though, according to medical records, she had a chronic sinus condition for several years prior to the accident, and she was taking antibiotics at the time of the accident? That is correct. I do not dispute that. The report does indicate that it aggravated that condition, and that's her primary care doctor providing that medical testimony. Was there any contrary medical evidence to that? No. Well, Dr. McGrady, she went and saw, and Dr. McGrady didn't recommend any follow-up treatment. However, Dr. Pardo was of the opinion that future care and treatment may be necessary, and more importantly, she would expect her to have further complications as a result of her chronic sinusitis. I do not disagree, sir. That is what the records say with regard to her sinus condition. But admittedly, you would have to hang your head on the argument that the incident in question aggravated the condition. It obviously didn't cause it. That is correct, Justice. That is correct. Same thing with the low back? That is absolutely correct. And that is the opinions that are rendered in the case. There is not a causation as it is an aggravation. Did Dr. Gragnani help you? Dr. Gragnani. Dr. Gragnani, in this case, examined the petitioner three or four times on behalf of the respondent. He, in his own words, said in this case, Justice, that the care and treatment that was provided to start with, pain injections, was appropriate. He admitted that in his deposition. What he disagrees with is that the remainder of the follow-up treatment with Dr. Pata and follow-up lesion treatment was necessary. What happens if the commission believes him? Well, if the commission believes him, there should still be payment for medical bills for Dr. Pardo, injections that they had that were ultimately recommended by Dr. Heffner and who were agreed to be appropriate by Dr. Gragnani, and those bills were not awarded by the commission. So if they hang their hat on the testimony of Dr. Gragnani, they still didn't award medical bills for procedures that he felt were appropriate under the circumstances. That's why I believe that Dr. Pardo's testimony in that regard should be given a greater weight. That first addresses the sinus condition in particular. The other thing that I would note just with regard to that, this accident was on September 15, 2001. She had an emergency appointment to have her face worked on by her dentist and her orthodontist, and she followed up with her primary care doctor, Dr. Pardo, on the 17th. That's two days after the accident in and of itself. The commission did not award medical expenses for that visit. I don't know why that is. There's ample testimony in her report and in her deposition that the treatment she provided was reasonably related to alleviate her condition of ill-being, and this was two days after the accident. I would submit to you that that wasn't taken into account, and that is an error, and it is against the manifest way of the evidence that for sure a first appointment with your own primary care doctor after a fall that requires hospitalization is appropriate. I'm sorry. How much is the bill? I would have to get the exact bill, Member Justice Donovan, but I believe that the care and treatment provided by Dr. Pardo up until her referral to Dr. Heffner is all real. It's care and treatment that she was required to receive from her own primary care doctor, and we can kind of dovetail into the second point so I can move it along, but with regard to her low back condition, I would encourage the members to turn to the appendix page 99, and that's page 7 and 8 of Dr. Pardo's testimony in this particular case. The question that Justice Donovan raises is what care and treatment was given by Dr. Pardo, what amounts were there. That's important in this case because Dr. Pardo, in her report and in her testimony, admits that the pain that they originally recognized as hip pain was actually back pain. So she was treating for a period of time with Dr. Pardo before she got referred to Dr. Heffner because there wasn't a proper analysis as to where this pain was coming from. So not only is our position that the first bill should be paid for, but all of that care and treatment up to her referring out to Dr. Heffner should be paid for in this particular case by the respondent, and that was not awarded by the commission in this case. Counsel, how do you respond to the argument? As I recall reading the record and the facts, the claimant suffered some fairly substantial injuries to her neck and back from a motor vehicle accident in 1993. She's having ongoing problems, admittedly, for all these years, and she then, despite the evidence of the system, she testified she had no particular problems prior to 2001. Can't the commission weigh that heavily against her? All these years she says she has no problems? She can, and I don't disagree that you cannot re-weigh that evidence under the standard. The issue is that the position of the petitioner and the appellant is Dr. Pardo was her primary care doctor, and their husband and wife practitioner in Belleville. They've seen her her whole life. She testified to a reasonable degree of medical certainty in her deposition and in her report that this accident aggravated her low back condition. The respondent in its brief and before the commission argued that Dr. Pardo relied on or handed off her patients, so to speak, to Dr. Heffner, and that's not the case. If you turn to page 7 and 8 of her report, she specifically says that all of her work and all of Heffner's work up to surgery was reasonably related to the accident, but her not being a neurologist, she couldn't render an opinion as to whether surgery was necessary. You might be sidestepping the issue. The point that I'm getting to, the threshold question, is even if that is true, the claimant testifies that she had no back problems prior to the alleged work injury in September of 2001, and she has a clearly documented medical history of back problems. Can't that weigh against her in the commission's mind? I don't disagree. It can, but where I would say it's different is she did not just testify to that fact. If you review the arbitration transcript before Arbitrator T, she indicated that she had received treatment to her low back, and even more importantly, she had received it as recently as nine months before the accident in question. And why did she testify at trial that she had no back? She testified at trial that she didn't have radicular back pain, and that in her mind was different than the actual pain that she had testified. Arbitrator T, in the transcript, even questioned her and said, now you're not trying to say that your back has never been injured before, and the plaintiff said, no, absolutely not, I'm not. The issue is with the radicular pain. The commission found that she just waited 10 months before she even saw a doctor. And I would submit, sir, that that is against the manifest way of the evidence. She was seeing Dr. Pardo starting two days after the accident, which she was not given compensation for, all the way up until they realized that it was a back issue and not a hip issue. And at that point in time, Dr. Pardo referred the petitioner to Dr. Heffner. So that was, I believe, in April of 2003, which would be about six months prior to, and there was care and treatment in the internal that she was treating with regard to her right hip. The commission didn't think much of Dr. Heffner, did they? The commissioner disregarded the opinion of Dr. Heffner to be as blunt as possible. And my position to the members of this court is, even with regard, even if you accept that principle is true, that the testimony is disregarded in its entirety. If you look at the testimony of Dr. Pardo, and you look at the testimony of Dr. Gragnani, who says under oath that the original course of pain injection treatments were appropriate, those opinions should be given more credibility and weight under the circumstances. As you know, the manifest way of the evidence standard applies to this appeal. And there's a corollary of that since the commission is within their province to judge the believability of the witnesses and the weight. Why specifically with regard to the low back pain and the chronic sinus condition, why is there a fine intention to manifest way of the evidence? Why is the opposite conclusion clearly apparent? It discounts the entire opinion and records of Dr. Pardo, who's been our primary treating care physician since 1995. I can understand if there isn't any evidence of her receiving care and treatment post-accident from her primary care physician. There's ample evidence of that. There's evidence that she went to the doctor on Monday, which is the first weekday after the accident, after receiving emergency medical treatment for her mouth, that the commission did not even award that amount in medical expenses. In my mind, the commission looked at that and disregarded the opinion of Dr. Pardo. And under the circumstances, I think that her testimony is to be given credibility. She is a primary care doctor who's been treating the patient in this case, concerning some of the previous problems that she's brought up. Dr. Groschio, I would also encourage the court to look at his testimony, and in particular on page A121. He also renders an opinion, not relying on Dr. Heffner, but undertaking his own review of the records that indicates that he believes there's an aggravation to the low back condition of the petitioner as a result of the accident. That is significant. This is a separate opinion, separate and apart from Dr. Heffner in this case. An opinion separate and apart from Dr. Pardo in this case. To directly respond to your question, had the commission set forth why Dr. Pardo's care and treatment and her opinions be discounted for a particular reason, I could better provide you with an answer. But in light of the fact that they really were not addressed, my position is that they weren't given appropriate weight and credibility, and they should be under the facts of the circumstances, because she is a primary care treating physician for the petitioner. You're saying that nobody testified contrary? To Dr. Pardo? No. No. And Dr. Gragnani testified afterwards that the care and treatment that initially was provided to her in the form of pain injections was appropriate. He was critical of any further care and treatment that she received. Dr. Pardo down the list. But no one has said that her following up with her primary care physician two days after the accident for a very serious injury is not reasonable and necessary to alleviate her condition of well-being? I mean, she falls through this hole in the ceiling all the way to the floor. She caught her face on the bottom floor. So there's racking. There's a deck and a lower deck. She fell. She hit her face on the lower deck, which caused her to bleed and lacerate her nose. And then the testimony is that she at the same time struck her right hip, and she had a contusion on her right hip. Thank you, Counsel. Your time is up. Time on rebuttal. Counsel, please. Please support Deborah Kiyonka for the Floor Shine Group. We're their employer in this case. I think you've all reviewed the standard that is appropriate for reviewing commission decisions. Mr. Keck is asking you to substitute your judgment for that of the commission. The commission looked at the conflicting medical testimony and made a decision that Dr. Pardo's opinion as to the sinusitis and the lower back condition was not as credible as what Dr. Bregnani said. Dr. Bregnani said there's a lot of symptom magnification going on. Nobody could give a good causation opinion, Dr. Bosho or Dr. Heffner, because she told them as she told the arbitrator that she had never had radiculopathy before. So their opinions are not credible. He's arguing that the commission arbitrarily rejected Dr. Pardo's testimony. What's your response to that? I don't think the commission arbitrarily rejected it. I think they looked to see what Dr. Pardo had done, and she had not treated these conditions, the sinusitis or the lower back after the accident. Dr. Heffner did the treatment for the lower back, and Dr. McGrady did the treatment for the sinusitis. So she was not involved in the day-to-day treatment of those. Now, her bill on September 17th was not paid. Is that correct? That's what Fred said, and that's the first time I noticed that. Well, the arbitrator has $1,564 in there for Dr. Pardo, but it does appear that the commission does not list her bill as payable. Are you denying that that is an appointment? I would concede that that first appointment would be… She also ordered an MRI at that time of the lumbar spine and prescribed pain medication. Later on, there were steroid injections and other therapies. I'll leave it to the court to decide what would be reasonable under the circumstances prior to the time of her… But you would agree that going to her two days after the accident seems to make sense? Yes, Your Honor. If there are no further questions. Thank you, counsel. Your vote, please. The only brief… Am I correct in that the bill you're asking to be paid is $1,564, what the arbitrator makes reference to? That's correct, Justice Sondland. That is correct. That bill is not paid. It was not ordered to be paid by the commission in this case. I'm not going to re-argue or belabor any other comments. You didn't file a reply to her, did you, sir? No, I did not file a reply to her, Your Honor. It's that Ms. Kiyaka just indicated that the care and treatment of Dr. Pardo was inappropriate, or wouldn't be appropriate, because it wasn't referring her out to Dr. McGrady or out to Dr. Peffman. Again, that's a primary argument why we directed the court to look at page 7 and 8 of her transcript. Initially, she was not diagnosed with those problems by Dr. Pardo, and that was the issue. She wanted to make sure that she got her to the appropriate entities and specialists to have her taken care of. She admits in her own report and admits in her own testimony that she confused, and I think the specific word she uses confuses, the hip pain that she was having and correlated it to hip pain because of the contusion, as opposed to back pain that they actually decided that she was experiencing. That's my only response in regard to her particular testimony. I would submit that, at a minimum, the bills for Dr. Pardo would be appropriate under the circumstances. Also, that Dr. Gragnani's testimony supports that the preliminary pain injections that Justice Donovan just discussed were also appropriate under the circumstances, and we'd ask that the award of the arbitrary be reinstated and the decision of the commission be set aside. Thank you, counsel. The court will take the matter under advisement for disposition.